IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-809

Filed 6 August 2024

Forsyth County, No. 22 CVS 3734

LIVINGSTONE FLOMEH-MAWUTOR, GEORGINA MICHAEL SHENJERE and KONSIKRATED MORINGA FARMS d/b/a MORE THAN MANNA, Plaintiffs,

v.

CITY OF WINSTON-SALEM, Defendant.

Appeal by plaintiffs from order entered 1 June 2023 by Judge Robert A. Broadie in Forsyth County Superior Court. Heard in the Court of Appeals 5 March 2024.

> *TLG Law, by Sean A. McLeod and Ty K. McTier, for plaintiffs-appellants.*
>
> *Womble Bond Dickinson (US) LLP, by James R. Morgan, Jr., and City of Winston-Salem, by City Attorney Angela I. Carmon, for defendant-appellee.*

ZACHARY, Judge.

Plaintiffs Livingstone Flomeh-Mawutor, Georgina Michael Shenjere, and Konsikrated Moringa Farms d/b/a More than Manna appeal from the trial court's order granting summary judgment in favor of Defendant, the City of Winston-Salem ("the City"). After careful review, we affirm.

## I.    Background

In the summer of 2019, Plaintiffs applied for a $100,000 loan via the City's small business loan program. Funded by the federal government, the City's small

business loan program is intended "to address the problem of urban decline within the City by focusing on revitalization, development, and/or redevelopment" of Neighborhood Revitalization Strategy Areas, as defined by the United States Department of Housing and Urban Development ("HUD").

In August 2019, Flomeh-Mawutor allegedly received verbal confirmation from Steven Harrison, a small business development specialist for the City, that Plaintiffs' loan request had been approved and that a written letter of approval would be sent the following week. Plaintiffs allege that "Harrison was . . . in routine communication" with Plaintiffs over the ensuing months and repeatedly promised that the loan would close soon.

On 17 February 2020, Harrison sent Plaintiffs a letter ("the Letter") stating that the City had "conditionally approved" Plaintiffs' loan, providing the preliminary terms for the loan, and requiring that the loan be closed within 90 days. The loan eventually closed on 2 July 2020, when Plaintiffs signed, *inter alia*, a loan agreement with the City. On 14 August 2020, the City disbursed the loan proceeds to Plaintiffs. However, Plaintiffs claim to have lost significant business opportunities and goodwill as a result of the delay in their receipt of the funds.

Accordingly, on 9 August 2022, Plaintiffs filed a complaint against the City, advancing claims for: (1) breach of contract, (2) negligent misrepresentation, and (3) negligent hiring and retention. On 17 October 2022, the City filed its answer and counterclaim, in which the City raised the affirmative defense of governmental

immunity and advanced counterclaims for breach of contract and unjust enrichment.[1]
On 21 December 2022, Plaintiffs filed their reply to the City's counterclaims.

On 5 May 2023, the City filed a motion for summary judgment on Plaintiffs' claims. The City principally relied upon its assertion that it was "entitled to governmental immunity and/or sovereign immunity as to all claims brought by Plaintiffs[.]" Both sides filed affidavits in support of their competing positions on this issue.

On 15 May 2023, the City's motion came on for hearing in Forsyth County Superior Court. On 1 June 2023, the trial court entered an order granting the City's motion and dismissing Plaintiffs' claims; it also certified the interlocutory order for immediate appeal pursuant to Rule 54(b) of the North Carolina Rules of Civil Procedure. Plaintiffs timely filed notice of appeal.

## II.  Grounds for Appellate Review

Generally, this Court only reviews appeals from final judgments. *See* N.C. Gen. Stat. § 7A-27(b)(1)–(2) (2023). "A final judgment is one which disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court." *Veazey v. City of Durham*, 231 N.C. 357, 361–62, 57 S.E.2d 377, 381, *reh'g denied*, 232 N.C. 744, 59 S.E.2d 429 (1950). Conversely, "[a]n interlocutory order is one made during the pendency of an action, which does not dispose of the case, but

---

[1] We decline to address the factual basis underlying the City's counterclaims, which remain pending before the trial court.

leaves it for further action by the trial court in order to settle and determine the entire controversy." *Id.* at 362, 57 S.E.2d at 381. Because an interlocutory order is not yet final, with few exceptions, "no appeal lies to an appellate court from an interlocutory order or ruling of the trial judge[.]" *N.C. Consumers Power, Inc. v. Duke Power Co.*, 285 N.C. 434, 437, 206 S.E.2d 178, 181 (1974).

However, an interlocutory order that disposes of fewer than all claims or parties in an action may be immediately appealed if "the trial court certifies, pursuant to [N.C. Gen. Stat.] § 1A-1, Rule 54(b), that there is no just reason for delay of the appeal[.]" *Turner v. Hammocks Beach Corp.*, 363 N.C. 555, 558, 681 S.E.2d 770, 773 (2009). Rule 54(b) provides, in relevant part:

> When more than one claim for relief is presented in an action, . . . or when multiple parties are involved, the court may enter a final judgment as to one or more but fewer than all of the claims or parties only if there is no just reason for delay and it is so determined in the judgment. Such judgment shall then be subject to review by appeal or as otherwise provided by these rules or other statutes.

N.C. Gen. Stat. § 1A-1, Rule 54(b).

A trial court's "[c]ertification under Rule 54(b) permits an interlocutory appeal from orders that are final as to a specific portion of the case, but which do not dispose of all claims as to all parties." *Duncan v. Duncan*, 366 N.C. 544, 545, 742 S.E.2d 799, 801 (2013). Proper certification of an interlocutory order pursuant to Rule 54(b) requires:

> (1) that the case involve multiple parties or multiple

- 4 -

claims; (2) that the challenged order finally resolve at least one claim against at least one party; (3) that the trial court certify that there is no just reason for delaying an appeal of the order; and (4) that the challenged order itself contain this certification.

*Asher v. Huneycutt*, 284 N.C. App. 583, 587, 876 S.E.2d 660, 665 (2022).

Here, the trial court granted summary judgment in favor of the City on Plaintiffs' claims, and dismissed Plaintiffs' claims accordingly. This ruling left the City's counterclaims pending before the court, rendering interlocutory the summary judgment order from which Plaintiffs appealed. *See Veazey*, 231 N.C. at 362, 57 S.E.2d at 381. Nevertheless, the trial court's proper Rule 54(b) certification effectively vests jurisdiction in this Court because the case involves multiple parties with multiple claims; the order on appeal finally resolved all claims against the City; and the trial court certified that "there is no just reason for delay" of an immediate appeal, and included this certification on the face of the order from which Plaintiffs appeal. *See Asher*, 284 N.C. App. at 587, 876 S.E.2d at 665. We therefore conclude that this Court has jurisdiction over this matter and proceed to the merits of Plaintiffs' appeal.

### III.    Discussion

Plaintiffs argue on appeal that the trial court erred by granting the City's motion for summary judgment and dismissing their claims. For the reasons that follow, we disagree.

### A. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c). Our appellate courts "review a trial court's order denying a motion for summary judgment de novo." *Meinck v. City of Gastonia*, 371 N.C. 497, 502, 819 S.E.2d 353, 357 (2018).

## B. Tort Claims

As discussed below, contract claims raise unique issues regarding the doctrine of governmental immunity. We therefore begin with Plaintiffs' tort claims, each of which involves allegations of the City's negligent operation of its small business loan program.

"Under the doctrine of governmental immunity, a county or municipal corporation is immune from suit for the negligence of its employees in the exercise of *governmental functions* absent waiver of immunity." *Id.* (cleaned up). "When, however, a county or municipality is engaged in a *proprietary function*, governmental immunity does not apply." *Id.* at 503, 819 S.E.2d at 358 (cleaned up). "As a result, the determination of whether an entity is entitled to governmental immunity turns on whether the alleged tortious conduct of the county or municipality arose from an activity that was governmental or proprietary in nature." *Id.* (cleaned up).

Our Supreme Court has repeatedly explained that "a governmental function is an activity that is discretionary, political, legislative, or public in nature and performed for the public good [on] behalf of the State rather than for itself, while a

- 6 -

proprietary function is one that is commercial or chiefly for the private advantage of the compact community." *Providence Volunteer Fire Dep't, Inc. v. Town of Weddington*, 382 N.C. 199, 212, 876 S.E.2d 453, 462 (2022) (cleaned up). In recent years, our Supreme Court has "adopted a three-step method of analysis for use in determining whether a municipality's action was governmental or proprietary in nature." *Id.* at 212–13, 876 S.E.2d at 462.

"The first step, or threshold inquiry, in determining whether a function is proprietary or governmental is whether, and to what degree, the legislature has addressed the issue." *Id.* at 213, 876 S.E.2d at 462 (cleaned up). Notably, this inquiry considers "not merely whether the legislature has explicitly provided that a specific activity is governmental but rather, *whether, and to what degree*, the legislature has addressed the issue." *Meinck*, 371 N.C. at 511, 819 S.E.2d at 362 (cleaned up). Nevertheless, "[i]f an action has been designated as governmental or proprietary in nature by the legislature, that is the end of the inquiry[.]" *Providence*, 382 N.C. at 213, 876 S.E.2d at 462 (cleaned up).

If the first step does not yield a definitive answer, the reviewing court proceeds to the second step: "determin[ing] whether the activity is one in which only a governmental agency could engage or provide, in which case it is perforce governmental in nature." *Id.* (cleaned up). However, in light of "our changing world" in which "many services once thought to be the sole purview of the public sector have been privatized in full or in part[,]" our Supreme Court recognized that a third step

may be necessary "when the particular service can be performed both privately and publicly[.]" *Id.* (citation omitted). This third step "involves consideration of a number of additional factors, of which no single factor is dispositive." *Id.* (citation omitted). "Relevant to this inquiry is whether the service is traditionally a service provided by a governmental entity, whether a substantial fee is charged for the service provided, and whether that fee does more than simply cover the operating costs of the service provider." *Id.* (citation omitted).

Applying this three-step method to the case at bar, we begin with the "threshold inquiry"—reviewing "whether, and to what degree, the legislature has addressed the issue." *Id.* (cleaned up). The City asserts that "at the time that the City's small business loan program loaned the $100,000 to Plaintiffs, the North Carolina [General Assembly] had specifically indicated, in N.C. Gen. Stat. § 160A-456, that this expenditure of funds for 'community development' was a governmental activity." Before considering this statutory argument, we must first address recent legislative changes.

Plaintiffs argue that the City is "misleading" this Court with a "wholly incorrect" statutory citation, because our General Assembly has repealed § 160A-456. However, our General Assembly did not repeal this grant of authority; rather, it merely reorganized our local planning and development regulation statutes. "Although Chapter 160A, Article 19 ([N.C. Gen. Stat.] §§ 160A-441 *et seq.*) was repealed and substantively recodified in Chapter 160D, Article 12 ([N.C. Gen. Stat.]

§ 160D-1201 *et seq*.), the provisions upon which [Plaintiffs] rel[y] are virtually unchanged." *United Daughters of the Confederacy v. City of Winston-Salem*, 383 N.C. 612, 645 n.17, 881 S.E.2d 32, 57 n.17 (2022). *Compare* N.C. Gen. Stat. § 160A-456 (2019) (authorizing cities "to engage in, to accept federal and State grants and loans for, and to appropriate and expend funds for community development programs and activities"), *with id.* § 160D-1311 (2023) (authorizing "local government[s]" to do the same).

Accordingly, to the extent that any actions by the City pertinent to this appeal took place after the recodification of § 160A-456 as § 160D-1311, Plaintiffs' argument lacks merit because the applicable statutory authorization has been in effect at all times relevant to this appeal. *See An Act to Clarify, Consolidate, and Reorganize the Land-Use Regulatory Laws of the State*, S.L. 2019-111, § 2.4, 2019 N.C. Sess. Laws 424, 530–31. As the former § 160A-456 was in effect at the occurrence of the complained-of actions in this case, and recognizing that the statutory language remains substantially unchanged despite its recodification, we will refer to § 160A-456 in our analysis.

The City compares this case to *Meinck*, in which the defendant-municipality "purchased [a] historic and vacant property and entered into [a] lease as part of its efforts at urban redevelopment and downtown revitalization." 371 N.C. at 504, 819 S.E.2d at 359. Our Supreme Court recognized that "several statutes [we]re relevant to" this effort. *Id.* at 505, 819 S.E.2d at 359; *see also id.* at 505–10, 819 S.E.2d at 359–

62 (surveying various statutes). The *Meinck* Court concluded that undertaking "an urban redevelopment project . . . in accordance with these statutes and for the purpose of promoting the health, safety, and welfare of the inhabitants of the State of North Carolina is a governmental function." *Id.* at 513, 819 S.E.2d at 364 (cleaned up).

However, the *Meinck* Court further recognized that "the legislature has not deemed all urban redevelopment and downtown revitalization projects governmental functions that are immune from suit." *Id.* "[E]ven when the legislature has designated a general activity to be a governmental function by statute, the question remains whether the specific activity at issue, in this case and under these circumstances, is a governmental function." *Id.* at 513–14, 819 S.E.2d at 364 (cleaned up). Consequently, the Court concluded that "while the applicable statutory provisions [we]re clearly relevant, . . . the legislature ha[d] not directly resolved whether" the defendant-municipality's purchase and lease of the historic building "as part of its downtown revitalization efforts [wa]s governmental or proprietary in nature[.]" *Id.* at 514, 819 S.E.2d at 364 (cleaned up).

We agree with the City that N.C. Gen. Stat. § 160A-456 is "clearly relevant" to our analysis of the instant case. Mindful that this first step, though not determinative, at least weighs in the City's favor, we follow the careful example of our Supreme Court. "Assuming, without deciding, that the initial step . . . is not determinative of the inquiry that we must undertake in this case, we proceed to the

next step, at which we are required to determine whether the activity is one in which only a governmental agency could engage." *Providence*, 382 N.C. at 217, 876 S.E.2d at 465 (cleaned up).

Regarding this second step, the City asserts that "[t]he money to operate the City's small business loan program comes from HUD block grants relating to [Neighborhood Revitalization Strategy Areas]. These kinds of grants only go to governmental entities." The City adds that "loans from the City's small business loan program are only available to businesses [that] are unable to secure full financing from conventional lending sources, such as private banks." Consequently, the City argues that "programs such as the City's small business loan program, financed by the HUD block grants relating to [Neighborhood Revitalization Strategy Areas], [are] something only a governmental entity could administer." "Since the program or activity in this case can only be provided by a governmental agency," the City concludes that it "is necessarily governmental[.]"

On the other hand, Plaintiffs contend that "the receipt of the [HUD] grant may be governmental in nature, but the loaning of those funds to private citizens is proprietary in nature." While Plaintiffs acknowledge that "it is certainly a public purpose for a city to develop its community[,]" they nonetheless claim that "it is not a governmental purpose for a city to loan money to its citizens." In this respect, whether the loan at issue constituted governmental or proprietary activity depends on how narrowly the activity is defined. Cognizant of our Supreme Court's recognition

that "many services once thought to be the sole purview of the public sector have been privatized in full or in part[,]" making it "increasingly difficult to identify services that can only be rendered by a governmental entity[,]" *id.* at 213, 876 S.E.2d at 462 (citation omitted), it is prudent to consider the additional factors of the third step.

As stated above, our Supreme Court has articulated a non-exhaustive list of additional factors to consider, "of which no single factor is dispositive." *Id.* (citation omitted). This list includes "whether the service is traditionally a service provided by a governmental entity, whether a substantial fee is charged for the service provided, and whether that fee does more than simply cover the operating costs of the service provider." *Id.* (citation omitted).

Again, the City persuasively notes that "the small business loan program, being a program funded by HUD block grants relating to [Neighborhood Revitalization Strategy Areas], is a program that only a governmental entity could administer." Further, the City suggests that "since [its] small business loan program only loans to businesses that cannot secure loans from traditional lenders such as banks, and is designed to operate at a loss, it is not a program that would be undertaken by a traditional private business such as a bank." Each of these points is supported in the record by the affidavit of Ken Millett, the Director of the City's Office of Business Inclusion and Advancement.

Plaintiffs disagree with the City's claim that its program is "designed to operate at a loss," and instead contend that "the City stands to make a profit from

this contract." This argument—which appears derived from Plaintiffs' unsupported proposition that "the City retain[ed] the initial $100,000.00 in funds"—is unavailing.

After carefully considering the three steps established by our Supreme Court, we conclude that each step favors a determination that the City's activities in this case constitute governmental, rather than proprietary, activity. This leaves one remaining issue with respect to Plaintiffs' tort claims: whether the City waived its claim of governmental immunity. *See Meinck*, 371 N.C. at 502, 819 S.E.2d at 357.

It is well established that "a city can waive its immunity by purchasing liability insurance." *Reid v. Town of Madison*, 137 N.C. App. 168, 170, 527 S.E.2d 87, 89 (2000); *see also* N.C. Gen. Stat. § 160A-485(a). However, the City's risk manager averred that "the City had neither purchased nor had in effect any liability insurance to cover such claims as are alleged in Plaintiffs' [c]omplaint." Moreover, "[t]his Court has consistently disallowed claims based on tort against governmental entities when the complaint failed to allege a waiver of immunity." *Paquette v. Cty. of Durham*, 155 N.C. App. 415, 418, 573 S.E.2d 715, 717 (2002), *disc. review denied*, 357 N.C. 165, 580 S.E.2d 695 (2003). As Plaintiffs' complaint failed to allege that the City waived its governmental immunity, their tort claims cannot survive the City's assertion of this affirmative defense. *Id.*

In sum, as to Plaintiffs' tort claims: the City's activity here constituted a governmental function, thus entitling the City to governmental immunity absent a waiver of that immunity. But Plaintiffs did not allege such a waiver by the City, and

moreover, nothing in the record indicates that the City in fact waived its immunity. Therefore, the trial court properly granted summary judgment in the City's favor as to Plaintiffs' tort claims.

## C. Breach of Contract

We next address Plaintiffs' breach of contract claim. In contrast to claims sounding in tort, a "local government . . . waives [its governmental] immunity when it enters into a valid contract, to the extent of that contract." *Wray v. City of Greensboro*, 370 N.C. 41, 47, 802 S.E.2d 894, 899 (2017). "Specifically, [our Supreme] Court has held that whenever the State of North Carolina, through its authorized officers and agencies, enters into a valid contract, the State implicitly consents to be sued for damages on the contract in the event it breaches the contract." *Id.* (cleaned up). "Likewise, a city or county waives immunity when it enters into a valid contract." *Id.* (cleaned up).

Generally, "to overcome a defense of governmental immunity, the complaint must specifically allege a waiver of governmental immunity. Absent such an allegation, the complaint fails to state a cause of action." *Id.* (citation omitted). However, "[b]ecause in contract actions the doctrine of sovereign immunity will not be a defense, a waiver of governmental immunity is implied, and effectively alleged, when the plaintiff pleads a contract claim." *Id.* at 48, 802 S.E.2d at 899 (cleaned up). "Thus, an allegation of a valid contract is an allegation of waiver of governmental immunity." *Id.*

Accordingly, we begin by assessing Plaintiffs' allegation of a valid contract. In their complaint, Plaintiffs did not specifically identify or describe the contract that they assert was breached. Plaintiffs initially suggested that Harrison breached several of his "promise[s] to close the loan" in 2019, but then only allege that "Plaintiffs and [the City] entered into a valid contract by . . . signing and accepting the terms of the small business loan from" the City. However, the City observes that "in their discovery responses, and in the deposition of Plaintiff Livingstone Flomeh-Mawutor, Plaintiffs specifically identified the [Letter] as the contract that they allege was breached."

The City persuasively argues that the Letter does not constitute a valid contract for several reasons. For example, the City explains that "Harrison did not have the actual authority to bind the City to a contract[.]" *See L&S Leasing, Inc. v. City of Winston-Salem*, 122 N.C. App. 619, 622, 471 S.E.2d 118, 120 (1996) (affirming summary judgment in favor of city where employee who signed an alleged contract "was not vested with actual authority to bind the city . . . to a contract" under the Winston-Salem Code). This Court recognized that "the law holds those dealing with a [c]ity to a knowledge of the extent of the power and of any restrictions imposed[.] . . . This is because the scope of such authority is a matter of public record." *Id.* (cleaned up).

Therefore, Plaintiffs are "charged with notice of all limitations upon the authority of [Harrison]" to enter into a contract binding the City. *Id.* Beverly Whitt,

the City's senior financial analyst, stated in her affidavit that Harrison "does not have – and has never had – the actual authority to enter into a contract on behalf of the City of Winston-Salem." This argument, one among several raised in the City's appellate brief, definitively supports the trial court's grant of summary judgment on Plaintiffs' contract claim.

Given that Plaintiffs failed to prove that the Letter was a valid contract, the City has not waived its governmental immunity from suit, and Plaintiffs cannot overcome the City's affirmative defense. *See Data Gen. Corp. v. Cty. of Durham*, 143 N.C. App. 97, 103, 545 S.E.2d 243, 247–48 (2001). Accordingly, the trial court properly granted the City's motion for summary judgment with regard to Plaintiffs' contract claim, as well.

## IV.    Conclusion

For the foregoing reasons, the trial court's order granting summary judgment in the City's favor is affirmed.

AFFIRMED.

Judges WOOD and THOMPSON concur.